1

2

3

4

5

6

7

8    **IN THE UNITED STATES DISTRICT COURT**

9    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,            No. CR S-02-0213-MCE-CMK
                                             CIV S-06-2409-MCE-CMK
12            Respondent,

13        vs.                          <u>FINDINGS AND RECOMMENDATIONS</u>

14   GABRIEL ORTIZ-VILLALOBOS,

15            Movant.

16   _____/

17            Movant, a federal prisoner proceeding pro se, brings this motion to correct or set

18   aside a criminal judgment pursuant to 28 U.S.C. § 2255.   Pending before the court are movant's

19   § 2255 motion (Doc. 313 in the criminal docket), respondent's answer (Doc. 317 in the criminal

20   docket), and movant's traverse (Doc. 319 in the criminal docket).

21

22                            **I.  BACKGROUND**

23            Movant was charged with the following in a seven-count grand jury indictment

24   returned on May 23, 2002:  (1) Count 1 – conspiracy to manufacture methamphetamine; (2)

25   Count 2 – conspiracy to possess a listed chemical with knowledge, or having reasonable cause to

26   believe, that it would be used to manufacture methamphetamine; (3) Count 3 – possession of a

1

listed chemical with knowledge, or having reasonable cause to believe, that it would be used to manufacture methamphetamine; (4) Count 5 – using, carrying, and possessing a firearm during a drug trafficking offense; and (5) Count 7 – criminal forfeiture.  Movant was not charged in Counts 4 or 6 of the indictment.  On May 28, 2003, movant and co-defendants were convicted on all counts.[1]  Movant, along with co-defendants Munguia, Timoteo, and Estrada, were sentenced on August 12, 2003, to 180 months in federal prison.[2]  Movant's conviction and sentence were affirmed on direct appeal in an unpublished decision issued on July 7, 2005.  See United States v. Barrera-Medina, 139 Fed. Appx. 786 (9th Cir. 2005), cert. denied 546 U.S. 1201 (2006).

As part of its discussion of the Defendants' claim associated with the Dodge Intrepid that their warrantless arrest violated the Fourth Amendment, the Court of Appeals recited the following facts:

> . . . *First*, following [a] May 9, 2002, meeting at which Detective Robles, Manuel Valle, and Hernandez negotiated the purchase of pseudoephedrine pills, officers conducting surveillance followed Manuel Valle and Hernandez to an apartment complex.  Manuel Valle and Hernandez parked their Lincoln Navigator two to three parking spaces from a Chrysler Concord and Dodge Intrepid, and then entered the apartment complex. The officers shortly thereafter observed five Hispanic men walking together from one of the apartments, get into the Chrysler Concord and Dodge Intrepid, and leave the apartment complex.  Thus, the following day, when both the Lincoln Navigator and the Chrysler Concord were used by Manuel Valle, Barrera-Medina, and Hernandez in effecting the drug buy, the officers had reason to believe that the occupants of the Dodge Intrepid – the Intrepid Defendants – were in some manner acquainted with those who had negotiated and were effecting the drug buy.  *Second*, given the manner in which the Dodge Intrepid was driven and its location before, during, and immediately after the drug buy, the officers had reason to believe that the Intrepid Defendants were engaged in counter-surveillance or security while Manuel Valle and Hernandez were purchasing the pseudoephedrine pills from Detective Robles.  *Third*, the manner in which the Dodge Intrepid followed the Lincoln Navigator and the Chrysler Concord after the drug buy provided further reason to believe that the Intrepid Defendants were participants in the drug buy.

> Id. at 791.

---

[1]   Count 7 was ultimately dismissed.

[2]   These four defendants were referred to at trial as the "Intrepid Defendants."

2

1    The Court of Appeals recited the following additional facts concerning the Intrepid Defendants'

2    connection to the conspiracy:

3              To begin, the Government introduced at trial, evidence . . . tending to
               show that the Intrepid Defendants were conducting counter-surveillance or
4              security in connection with the drug buy.  The Government also introduced
               at trial evidence that the defendants used cell phones to make at least
5              sixteen calls amongst themselves in the less than four hours spanning the
               period before, during, and after the drug buy, further suggesting that the
6              Intrepid Defendants were conducting counter-surveillance or security on
               behalf of Manuel Valle, Barrera-Medina, and Hernandez.  Finally, the
7              Government introduced into evidence a number of items found in the
               Dodge Intrepid that a rational trier of fact could have found to be
8              instrumentalities of the crime:  a handgun, a semi-automatic pistol, the
               same type of plastic wrap that had been used to wrap the money that
9              Manuel Valle had used to purchase the pseudoephedrine pills from
               Detective Robles, and a Day Planner that included a business card for the
10             motel where the drug buy had occurred.

11             Id. at 791-92.

12

13                            **II.  DISCUSSION**

14             In his § 2255 motion, movant raises three claims:  (1) the evidence was

15    insufficient to support convictions for conspiracy to manufacture methamphetamine; (2) the

16    sentence is too severe; and (3) ineffective assistance of counsel.

17    A.     **Sufficiency of the Evidence**

18             Movant argues:

19             In the instant case there is lack of evidence to support the
               conspiracy charges to manufacture Methamphetamine as charged in the
20             indictment. . . .
               In order for a person to manufacture Methamphetamine it requires
21             for this person to obtain a series of chemicals which are use to
               manufacturing the Methamphetamine.  And not just are these chemicals
22             used for the manufacturing of the Methamphetamine, but these are used
               for the manufacturing of the Methamphetamine byproducts as well.

23

24    / / /

25    / / /

26    / / /

3

1  Movant then lists 28 chemicals and 22 items of equipment required to manufacture

2  methamphetamine.  Movant continues:

3              In the instant case, the Defendant was not found in possession of
        all the chemicals or all the equipment needed to manufacture
4       Methamphetamine and Methamphetamine byproducts.  This being the
        case, then how can somebody be charged with conspiracy to manufacture
5       methamphetamine when all the chemicals and equipment needed to do so
        is not present?

6

7  Thus, movant's argument is that the conspiracy convictions cannot stand because the evidence

8  does not show that he was in possession of all the required chemicals and equipment.

9              The sufficiency of the evidence to support movant's conspiracy convictions was

10  considered by the Ninth Circuit on direct appeal, which concluded that the evidence was

11  sufficient.  See Barrera-Medina, 139 Fed. Appx. at 791-92.  Specifically, the court concluded:

12              Counts 1 and 2 charged the Intrepid Defendants . . . with conspiracy. . . .
        [¶] Here, the Intrepid Defendants concede that the Government proved a
13       conspiracy among Manuel Valle, Barrera-Medina, and Hernandez.  Thus,
        the Government was required to prove only that the Intrepid Defendants
14       intentionally participated in the conspiracy, even if only in a "slight" way.
        Viewing the evidence in the light most favorable to the Government, a
15       rational trier of fact could have found beyond a reasonable doubt that the
        Intrepid Defendants did so.  The jury could have determined that the
16       Intrepid Defendants were not merely present at the scene of the drug buy
        and that their conduct was not as consistent with being innocent
17       bystanders as it was with guilt.

18              Id.

19  Because the Court of Appeals has already concluded that the evidence was sufficient to support

20  movant's conspiracy convictions, the sufficiency of the evidence cannot be re-litigated in the

21  context of a § 2255 motion.  See Odom v. United States, 455 F.2d 159, 160 (9th Cir. 1972);

22  United States v. Redd, 759 F.2d 699, 700-01 (9th Cir. 1985).

23              Moreover, movant's argument is simply not supported by the facts of this case and

24  the law of conspiracy.  As the Ninth Circuit stated in its opinion on direct appeal:

25              . . . Where the Government proves the existence of a conspiracy, it need
        only prove a "slight" connection between the conspiracy and the
26       defendants to convict the defendants of conspiracy.  United States v.

4

Aichele, 941 F.2d 761, 763 (9th Cir. 1991).  The term "connection" in this context – "slight" or otherwise – means intentional participation in the conspiracy.  United States v. Herrera-Gonzalez, 263 F.3d 1092, 1097-98 (9th Cir. 2001).  The modifier "slight" means that "a defendant need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details."  Id. at 1095.

Barrera-Medina, 139 Fed. Appx. at 791.

In this case, it is irrelevant whether movant was in possession of all the chemicals and equipment required to manufacture methamphetamine to establish that he had at least a slight connection with the admitted conspiracy.

**B.    Severity of Sentence**

Movant argues:

> The issue presented by this case is whether unusually harsh collateral consequences that are visited by law on a defendant as a result of his conviction may provide a basis for mitigating the penal sanction that would otherwise be required. . . .
> Collateral consequences are not part of the judgment of conviction and are not imposed upon the defendant for the purpose of punishing him.
> The effect of such consequences, however, may be as punitive as a term of incarceration.  This is particular true here where the collateral consequence is deportation and where a consequence of that . . . is a longer period of imprisonment under more severe conditions than would apply to a United States citizen convicted of the same offense.

Movant concludes that, because he is an alien who has twice been convicted of crimes involving moral turpitude, he faces the harsh consequence of removal from the United States following completion of his 180-month sentence.  He also argues that, because he is a criminal alien, he is facing harsher conditions of confinement because he is not eligible to serve his sentence at a minimum security facility.

The court agrees with respondent that these arguments are not cognizable in the context of a § 2255 motion.  Movant's claims regarding execution of his sentence must be raised by way of a habeas corpus petition under 28 U.S.C. § 2241.  See Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

/ / /

C.   **Ineffective Assistance of Counsel**

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, the movant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  See id. at 688.  To this end, the movant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  See id.  In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, the movant must affirmatively prove prejudice.  See Strickland, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

/ / /

/ / /

/ / /

Movant argues that his trial counsel was ineffective in three ways:

First, the Defendant's counsel did not challenge the issues that the Defendant is raising here in this appeal, at trial, namely that the Defendant should have been tried for attempted robbery, or conspiracy to attempt robbery. The evidence in this case supports this fact. However, the Defendant's counsel failed to attack this fact at trial.

Second, it is clear that Ephedrine/pseudoephedrine is not a listed chemical under 21 U.S.C. § 841(c)(2) something that the counsel in this case did not attack at trial as well.

Third, the Defendant in this case did not use, carry, and possess a firearm. The firearms in this case were found in a car which did not belong to the Defendant, these firearms were stored under the seat of the car or trunk, the Defendant did not own any of the firearms, the Defendant did not handle any of the firearms.

The court agrees with respondent that, based on the overwhelming evidence in this case, movant cannot meet his burden of showing that, but for counsel's alleged deficient representation, the result would have been any different. As to movant's contention that counsel should have argued that movant was only guilty of robbery, that argument was made by one of the other Intrepid Defendants and rejected by the jury. Thus, it would not have made any difference to the outcome as to this movant. As to the argument that counsel failed to argue that pseudoephedrine is not a listed chemical, that would have made no difference because, contrary to movant's assertion, that chemical is listed at 21 U.S.C. § 802(34). Finally, movant's counsel did in fact argue that movant should not be convicted of the firearm offense.


## III. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.     Movant's motion pursuant to 28 U.S.C. § 2255 (Doc. 313 in the criminal docket) be denied; and

2.     The Clerk of the Court be directed to close companion civil case no. CIV S-06-2409-MCE-CMK.

/ / /

/ / /

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

3  after being served with these findings and recommendations, any party may file written objections

4  with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

5  and Recommendations."  Failure to file objections within the specified time may waive the right

6  to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

7

8  DATED:   September 17, 2007.

9

10                                                                    _____

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE